UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. |
| **18 AUDUBON PLACE, LLC** | **18-12232** |
| | SECTION A |
| DEBTOR | CHAPTER 11 |

## REASONS FOR DECISION

The Motion to Stay Execution of Portions of Order Pending Appeal filed by 18 Audubon Place, LLC ("Debtor"), Richard Goldenberg, and Karen Goldenberg came before the Court on October 30, 2018.[1]

**I. Procedural Posture**

On August 1, 2018, Debtor filed a Voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code in the Western District of Louisiana under case no. 18-50960.

On August 14, 2018, SBN V FNBC LLC ("SBN") filed a Motion to (A) Immediately Evict Occupier from Collateral, and (B) Authorize Expedited Section 363 Sales Process, or in the Alternative, to Appoint a Chapter 11 Trustee pursuant to 11 U.S.C. § 1104, or in the Alternative to Terminate Exclusivity Period pursuant to Section 1121(D) ("the SBN Motion").

On August 23, 2018, venue was transferred to the Eastern District of Louisiana at Debtor's request, and the August 28th hearing was cancelled.

On August 28, 2018, SBN re-urged the SBN Motion in the transferred case.[2] The Court scheduled it for hearing on October 3, 2018.[3]

---

[1] P-72.

[2] P-4.

[3] P-5.

At the October 3, 2018, hearing, the Court entered an oral ruling ordering the appointment of a Chapter 11 Trustee under 11 U.S.C. § 1104. The Court continued the SBN Motion to October 10, 2018, for consideration of the requests for eviction and sale after appointment of a Chapter 11 Trustee.[4]

The U.S. Trustee filed an Application for Order Approving Appointment of Trustee, David V. Adler ("Trustee"), which was granted by the Court on October 10, 2018, prior to the continued hearing. P-47.

At the hearing on October 10, 2018, Trustee joined the SBN Motion and requested that the Court evict the Goldenbergs stating that deferred maintenance issues needed to be addressed prior to sale, and the Goldenbergs presence and belongings on the Property would hinder the sale process.

SBN produced evidence in the form of witness testimony that the Property would be secure without occupants as it is in a gated community with guards and cameras.

A review of the evidence offered at the continued hearing provided:

1. Debtor is a single purpose entity owning 18 Audubon Place, New Orleans, La. ("Property").

2. Debtor's members are Richard Goldenberg (98%) and his son, Robert Goldenberg (2%).

3. Richard Goldenberg previously owned the Property and transferred it to Debtor on May 31, 2012.[5]

4. The Property is encumbered by a mortgage to secure a note made by Debtor in the original principal amount of $4,420,000, bearing interest at the rate of 4.75% per annum, payable

---

[4] P-42.

[5] P-55, 10/03/18, Exh. D.

in monthly installments of $26,175.00 beginning on June 15, 2015, and continuing until May 15, 2020, when the all outstanding principal and interest would be due and payable. The note was payable to First NBC Bank ("FNBC"). When FNBC failed, SBN became the holder of the Note ("SBN Note").

5. As of the Petition date, Debtor scheduled a debt to SBN of $4,880,000. The scheduled amount was amended to match SBN's proof of claim. SBN proof of claim no. 1 reflects an outstanding principal balance of $4,416,044.48, accrued and unpaid interest of $1,011,552.82, attorneys fees of $12,534,86, late charges of $6,000.00, force placed insurance premiums of $12,123.26, and expenses and costs of $89.43. No payments have been received on the SBN Note since August 2016. The amount necessary to cure defaults under the SBN Note as of the Petition Date was at least $658,947.55.

6. As of the Petition date, $65,600.00 was due to Orleans Parish in 2018 property taxes for the Property. The Property was sold for nonpayment of 2017 property taxes to Forstall Follies LLC for the price of $71,513.90.[6]

7. As of the Petition Date, Debtor scheduled an account due by the Goldenbergs for past due rent in the range between $1,200,000- $600,000.00.

8. A written lease between Debtor and the Goldenbergs was signed on July 23, 2018 and recorded in the conveyance records of Orleans Parish on July 31, 2018.[7] The lease requires payments of $25,000 per month, the payment of property taxes and insurance against all hazards. The term of the lease purports to be from July 2016 through December 2019.

---

[6] P-55, 10/03/18, Exh. C.

[7] P-55, 10/03/18, Exh. B.

9. The obligations owed by Debtor to SBN are in default. On October 11, 2016, First NBC, as predecessor in interest to SBN, filed a Petition for Foreclosure Via Executory Process in Orleans Parish.[8] A writ of *fieri facias* was executed by the Clerk of Court for Orleans Parish directing the Sheriff to seize and sell the Property in satisfaction of the SBN Note. A notice of seizure was recorded in the conveyance records of Orleans Parish on October 25, 2016 seizing the Property.

10. The Goldenbergs paid one $25,000.00 payment to Debtor postpetition.

11. The Goldenbergs alleged that the written lease reflects their agreement with Debtor.

12. As of the Petition Date, Debtor's only other asset is a checking account with a balance of approximately $22,000.

13. For purposes of the hearing, the parties estimated the property to be worth $5,200,000.00.

14. The Goldenbergs were present at the hearing and offered no evidence to refute any of the above facts. Specifically, the Goldenbergs did not contest:

a) Their failure to timely pay property taxes due for calendar years 2017 and 2018 on the Property. Nor did they refute the tax sale to Forstall Follies LLC that resulted from their failure to pay;

b) Their obligation of $600,000 in rent due to Debtor; or

c) Their failure to pay two (2) of three (3) postpetition payments due to Debtor.

---

[8] P-55, 10/03/18, Exh. A.

Based on a finding of the above facts, this Court held the recorded lease was unenforceable as to third parties pursuant to La. R.S. 13:3888(A).[9] But in any event, given that the obligations owed under the alleged agreement between Debtor and the Goldenbergs were in default, the Goldenbergs had not paid rent timely postpetition, and the Trustee was requesting possession of the Property, this Court ordered that the Goldenbergs be vacate the Property no later than November 10, 2018.[10]

On October 19, 2018, Debtor,[11] Richard Goldenberg, and his wife Karen Goldenberg (collectively "Appellants") filed a Notice of Appeal of the Order granting eviction.[12] Appellants filed the instant Motion to Stay Execution of Portions of Order Pending Appeal. Appellants seek a stay of the eviction without necessity of a bond. In lieu of posting a supersedeas bond, Appellants propose that the Goldenbergs pay the monthly rent, maintain the Property, pay the Audubon Place

---

[9] La. R,S. 13:3888(A) provides that "[u]pon the sheriff's filing of the notice of seizure...no ...surface lease...or other instrument or writing relating to or purporting to affect immovable property that has not been filed previously for registry shall effectively create, transfer, or encumber any interest in the immovable property under seizure."

[10] P-51, 57.

[11] The Court notes that Debtor has no standing to pursue an appeal of this Order given the appointment of a trustee because it is not a "person aggrieved." Debtor is not directly and adversely affected pecuniarily by the order of the bankruptcy court; instead the estate as represented by the trustee is the proper party to raise any objection to the order. 11 U.S.C. § 323; *In re Matter of Delta Produce L.P.*, 845 F.3d 609 (5th Cir. 2016); *Kane v. National Union Fire Insurance Company*, 535 F.3d 380 (5th Cir. 2008); *In re Aubrey Wring*, 2015 WL 3824860 (6th Cir.B.A.P. 2015). The Court also notes that it is likely a conflict of interest for the same attorney to represent both Debtor and the Goldenbergs.

[12] P-71.

Commission fees, and escrow taxes. Appellants have not appealed the Order appointing a Chapter 11 Trustee.

SBN and Trustee oppose the Motion to Stay.[13]

## II. Law and Analysis

In deciding whether to stay its Order pending appeal, the Court must consider four elements:

(1) whether the movant has made a showing of likelihood of success on the merits; (2) whether the movant has made a showing of irreparable injury if the stay is not granted; (3) whether the granting of the stay would substantially harm the other parties; and (4) whether the granting of the stay would serve the public interest.[14]

F.R.B.P. 8007 provides that an order of a Bankruptcy Court may be stayed pending appeal, and the court "may condition relief on filing a bond or other security with the bankruptcy court." F.R.B.P. 7062 makes applicable F.R.C.P. 62, which provides that "[i]f an appeal is taken, the appellant may obtain a stay by supersedeas bond."[15] While F.R.C.P. 7062 does not automatically apply in contested matters, courts have discretion to make it applicable in a matter to "protect the rights of all parties in interest."[16]

Local Rule 7062-1 directs that stay of execution of money judgments require a bond in the amount of the judgment plus twenty percent, the order on appeal in this case is not a money

---

[13] P-80 and 81.

[14] *In re First South Savings Association*, 820 F.2d 700, 709 (5th Cir. 1987) (citing *Ruiz v. Estelle*, 666 F.2d 854, 856 (5th Cir. 1982)).

[15] F.R.C.P. 62(d).

[16] F.R.B.P. 9014, Advisory Committee Note (1999).

judgment. As such, this court must decide whether a bond will adequately compensate the appellee pending the delay for appeal.[17]

> The purpose of a supersedeas bond is to preserve the status quo while protecting the non-appealing party's rights pending appeal. A judgment debtor who wishes to appeal may use the bond to avoid the risk of satisfying the judgment only to find that restitution is impossible after reversal on appeal. At the same time, the bond secures the prevailing party against any loss sustained as a result of being forced to forgo execution on a judgment during the course of an ineffectual appeal.
>
> \*          \*          \*
>
> If a judgment debtor objectively demonstrates a present financial ability to facilely respond to a money judgment and presents to the court a financially secure plan for maintaining that same degree of solvency during the period of an appeal, the court may then exercise discretion to substitute some form of guaranty of judgment responsibility for the usual supersedeas bond. Contrawise, if the judgment debtor's present financial condition is such that the posting of a full bond would impose an undue financial burden, the court similarly is free to exercise a discretion to fashion some other arrangement for substitute security through an appropriate restraint on the judgment debtor's financial dealings, which would furnish equal protection to the judgment creditor.[18]

**A. Likelihood of Success on the Merits**

Fifth Circuit law is clear that:

Likelihood of success remains a prerequisite in the usual case even if it is not an invariable requirement. Only "if the balance of equities (i.e. consideration of the other three factors) is ... heavily tilted in the movant's favor" will [the Fifth Circuit] issue a stay in its absence, and, even then, the issue must be one with patent substantial merit.[19]

---

[17] 10 COLLIER ON BANKRUPTCY ¶ 7062.06 (Richard Levin & Henry J. Sommer eds. 16th ed.).

[18] *Poplar Grove Planting and Refining Co., Inc. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1190-91 (5th Cir. 1979).

[19] *Ruiz v. Estelle*, 666 F.2d at 657.

Appellants' appeal rests on three (3) errors:

1). This Court's ruling that the lease was invalid;

2). The Order to vacate did not follow Louisiana eviction law;

3). The appointment of a Chapter 11 Trustee mooted the other relief requested by SBN, and SBN has no authority to act on behalf of the estate.

### 1. Louisiana Procedures for Eviction Are not the Exclusive Means of Possession

Bankruptcy Courts have jurisdiction over all property of the estate. 28 U.S.C. §§ 157 and 1334(e). A person in possession of property of the estate must deliver to the trustee any property of the debtor.[20] Trustee has control of property of the estate under 11 U.S.C. § 1106. The Goldenbergs allege on appeal that possession of the Property may only be obtained through an eviction process which parallels state law.

While "[i]n the absence of controlling federal law, 'property' and 'interests in property' are creatures of state law,"[21] a bankruptcy court is not compelled to follow a state court *procedure* when administering property of the estate. Instead, federal law augments the Bankruptcy Code with any process available under state law.[22] In this case, the Bankruptcy Code provides a means, through

---

[20] 11 U.S.C. § 542 (a).

[21] *Barnhill v. Johnson*, 503 U.S. 393, 398, 112 S.Ct. 1386, 1389, 118 L.Ed.2d 39 (1992). *See also Butner v. U.S.*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979) (State property law applies "[u]nless some federal interest requires a different result.")

[22] *See, e.g.,* F.R.C.P. 64, which is made applicable to this proceeding by F.R.B.P. 7064.

> Except as otherwise provided by the Constitution of the United States or an applicable statute, provisional remedies, which authorize seizing a person or property to secure satisfaction of the potential judgment, are available in a federal court if authorized under the law of the state where the district is located.

11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2932 (3d. ed. 2013).

8

a turnover action, of obtaining possession of property of the estate. Resort to the eviction procedures under Louisiana is unnecessary and unwarranted because there is a controlling federal interest in a bankruptcy court's authority over property of the estate.

Ordinarily, a request to turnover property of the estate must be made by adversary proceeding; however, when held by a debtor, it may be brought by motion.[23] In this case, the Goldenbergs are in essence the owners of the Property. Having created Debtor for the sole purpose of holding their home, they admit that no rents have been paid to Debtor over the term of their "lease," nor have they satisfied property taxes outstanding against the Property for the last three (3) years. Debtor has no assets with which to satisfy the obligations it owes, other than those that must be supplied by the Goldenbergs. Richard Goldenberg is Debtor's agent, and Debtor's principal place of business is his residence, the Property.[24] Goldenberg has also offered the Property to secure tuition obligations for his children's education, and a consent judgment has been recorded against the Property for this purpose.

Debtor has so commingled its affairs with the Goldenbergs, that there is no distinction between the two. Debtor has been used by the Goldenbergs to thwart collection efforts even as they live in the Property. Debtor, as a hopelessly conflicted entity, cannot be expected to enforce its rights under the alleged "lease." So, even though the turnover motion is nominally against the Goldenbergs, it is in essence a motion against Debtor as their alter ego.[25]

---

[23] *See* Bankruptcy Rule 7001.

[24] The Court notes that a last minute attempt to manufacture venue in the Western District of Louisiana was confected by Debtor through a "desk sharing agreement" with a company in Lafayette, La. This was quickly revealed by the creditor class, and venue was transferred to the Eastern District.

[25] *Reed v. Nathan*, 558 B.R. 800 (E.D. Mich. 2016).

Further, failure to raise a complaint based on the procedural method by which an issue was brought before the court is waived if not brought to the court's attention at the hearing on the matter.[26] Thus, any objection to the absence of adversary process has been waived.

For these reasons, the Court finds that it is unlikely that the Goldenbergs will succeed on the appeal based on this issue.

### 2. No Oral Lease Was Proven

The Court ruled that the recorded lease was invalid pursuant to La. R.S. 13:3888(A) as it was recorded subsequent to Notice of Seizure. La. R.S. 13:3888(A) provides that after the recordation of a Notice of Seizure, the later recordation of a document purporting to affect rights in immovable property is ineffective to transfer or create any interest in the property.

Debtor contends that even if the recorded lease is invalid, Debtor entered into an oral lease prior to Notice of Seizure. La. C.C. Art. 2681 provides:

> A lease may be made orally or in writing. A lease of an immovable is not effective against third persons until filed for recordation in the manner prescribed by legislation.

No evidence of an oral lease was presented at the hearing. Although available to testify, neither of the Goldenbergs submitted any evidence or testimony to support their allegations. In fact, the Goldenbergs failed to raise this as an issue during the hearing. The failure to raise an issue, known

---

[26] *Feld v. Zale Corp. (Matter of Zale Corp.)*, 62 F.3d 746, 763 (5th Cir. 1995) (If the requested relief is known prior to the hearing, hearing proceeds without objection, and judgment is entered, objection based on the absence of adversary process is waived).

to the parties at a hearing on the merits, prevents the assertion of the issue on appeal.[27] For this reason the Court concludes that the Goldenbergs are unlikely to be successful on appeal.[28]

### 3. Standing

Appellants contend that the order to vacate should be overturned because SBN did not have standing to request eviction. At the first hearing, the Court ordered the appointment of a Chapter 11 Trustee and continued the request for possession to allow the Trustee to join or oppose the motion. At the continued hearing, Trustee joined the motion and argued for possession.

The Bankruptcy Code charges trustees with preservation of property of the estate for the benefit of creditors.[29] Because Trustee has standing to request possession, and did so, it is unnecessary to reach the issue of SBN's standing.[30]

---

[27] *Dunbar v. Seger-Thomschitz*, 615 F.3d 574, 576 (5th Cir. 2010).

[28] For completeness' sake, an oral lease is also ineffective as to Trustee. 11 U.S.C. § 544.

[29] *In re CoServ, L.L.C.*, 273 B.R. 487, 498 (Bankr.N.D.Tex. 2002) (citing 11 U.S.C. §§ 1106 and 704).

[30] The Court notes that in *Louisiana World Exposition v. Federal Insurance Co.*, 858 F.2d 233 (5th Cir. 1988), the Fifth Circuit ruled that the unsecured creditors committee had standing under sections 1103 and 1109(b) to sue on behalf of a debtor-in-possession when the debtor-in-possession unjustifiably refused to pursue an action that was in the best interest of creditors or could not pursue it due to a conflict of interest. *See also Official Committee of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548 (3rd Cir. 2003). Because Richard Goldenberg is a 98% member of Debtor, Debtor has no interest in removing him from the Property. Therefore, Debtor has a conflict of interest and no incentive to evict its majority member even when to do so would be in the best interests of the estate. There is no unsecured creditors committee in this case principally due to the few creditors that exist. In fact, only five creditors appear to have claims against this estate, SBN and Trinity Episcopal School for debts secured by the Property, Orleans Parish and Forstall Follies LLC for property taxes, and the Audubon Place Commission for dues owed to the homeowners association. SBN, Trinity Episcopal School, and the Audubon Place Commission all joined in requesting that possession of the Property be returned to the estate. (The parties holding tax claims were not present.) Given that all creditors present and the majority in amount and number sought the relief requested, the Court could have allowed them authority to pursue the Motion. Due to the

For the above reasons, the Court finds that Debtor has little likelihood of success on the merits on this issue.

**B. Irreparable Injury**

Appellants contend that they will be irreparably harmed if the eviction order is not stayed pending appeal. They maintain that the estate will be unnecessarily depleted by not collecting rent from the Goldenbergs, and Trustee will incur debt in maintaining the Property.[31] Appellants also maintain that failure to stay the eviction order will result in the appeal being moot as the Goldenbergs will have already been evicted and forced to lease a new residence.

The Court accepts that the Goldenbergs may be harmed if forced to vacate the premises pending appeal. Further, they may lose the right to recover possession should the Property be sold pending their appeal. However, because Trustee has the right to reject even a valid, enforceable lease[32] it is unlikely they could maintain possession even if their appeal were successful.

Given the defaults that exist between Debtor and the Goldenbergs, Trustee has made his preference for them to vacate the Property clear. On rejection, the Goldenbergs are entitled to a

---

Trustee's intervention, this was not necessary.

[31] Although the Goldenbergs allege that without rents the estate will have insufficient funds to maintain, repair or market the Property, Trustee also notes that SBN has a security interest in leases and rents, so the benefit of rental payments to the estate is unclear.

[32] Pursuant to 11 U.S.C. § 362 (a) a trustee may assume or reject any executory contract or unexpired lease of the debtor. Bankruptcy courts can order the sale of estate property free of liens, encumbrances, and interests pursuant to section 363, including free of any lease. *Precision Industries, Inc. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537, 548 (7th Cir. 2003).

claim for damages[33] offset against any rents owed. A damage that can be calculated in money is by definition, reparable.[34] Thus, their claim for irreparable injury is without merit.

### C. Substantial Harm to Other Parties if the Stay is Granted

The Property is Debtor's main asset. Trustee represented that the Property has not been well maintained and cannot be shown for sale in its present state. Specifically, the Property is in need of repairs and the overwhelming amount of Goldenberg possessions[35] makes repairing, much less showing, the Property problematic. Trustee also stated that in its present condition the Property may not sell or if sold, would bring a lower price than if it were repaired, clean, and empty of the Goldenberg possessions. SBN also represented that a potential purchaser it located would not enter the Property as long as the Goldenbergs were in residence.

Given the substantial risk associated with the Goldenbergs' continued possession due to deferred maintenance, appearance, and financial risk of nonpayment, the Court agrees that the creditors will be harmed by staying the Order as the Property cannot be prepared for market or shown to its best advantage.

### D. Public Interest

The "public interest" factor is irrelevant in the case at bar as it is implicated "in litigation involving the administration of regulatory statutes."[36]

---

[33] 11 U.S.C. § 362 (g) and (h).

[34] *Graham v. Triangle Publications, Inc.*, 344 F.2d 775 (3rd Cir. 1965).

[35] The Goldenbergs have nine children, most of whom still live at home.

[36] *Virginia Petroleum Jobbers Association v. Federal Power Commission*, 259 F.2d 921, 925 (U.S.App.D.C. 1958). *See also Belcher v. Birmingham Trust National Bank*, 395 F.2d 685 (5th Cir. 1968).

### IV. Conclusion

While there is a possibility of harm to Appellants should a stay be denied, the balance of equities is not tilted in Appellants' favor. Appellants have not demonstrated a likelihood of success on the merits; there is no public interest in granting a stay pending appeal; and there is a substantial risk of harm to the estate and creditors if the eviction order is stayed. Therefore, the Court denies the Motion to Stay Execution of Portions of Order Pending Appeal. The Court will enter a separate Order in accord with these Reasons.

New Orleans, Louisiana, October 30, 2018.

Hon. Elizabeth W. Magner
U.S. Bankruptcy Judge